| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

RACHAEL MARSHALL, §
§
    Plaintiff, §
§
*versus* § CIVIL ACTION NO. 1:21-CV-529
§
HUMAN SERVICES OF SOUTHEAST §
TEXAS, INC. d/b/a SPINDLETOP CENTER §
f/k/a SPINDLETOP MHMR SERVICES, §
§
    Defendant. §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Spindletop Center's ("Spindletop") Opposed Application for Court to Enter Order Confirming Arbitration Award (#17). Plaintiff Rachael Marshall ("Marshall") filed a response in opposition to this motion (#18), and Spindletop filed a reply (#19). Having considered the motion, the submissions of the parties, and the applicable law, the court is of the opinion that Spindletop's motion should be granted.

I.    <u>Background</u>

On October 21, 2021, Marshall filed an employment discrimination action against Spindletop, alleging that from approximately September 2015 to June 2018, when her employment was terminated, she suffered sexual harassment and retaliation at her workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Texas Commission on Human Rights Act, Texas Labor Code § 21.001. Subsequently, on March 4, 2022, Marshall filed her Motion to Stay Pending Arbitration (#7), explaining that she had previously signed an arbitration agreement (the "Arbitration Agreement") on July 13, 2015, and that Spindletop had

agreed to cover the costs of arbitration.[1] Spindletop then filed an Unopposed Motion to Compel Arbitration (#11) on March 30, 2022. The court granted both Marshall's motion to stay and Spindletop's motion to compel arbitration by an Order (#13) dated April 21, 2022, which directed the parties to commence arbitration by May 23, 2022.

The parties agreed to arbitrate before Judge Steven Kirkland. Spindletop filed a motion for summary judgment with Judge Kirkland on July 29, 2022, and Marshall responded. Following a motion hearing held in conjunction with the final status conference, Judge Kirkland issued a final decision on September 23, 2022, finding that Marshall should "take nothing." Spindletop then filed the current motion on December 22, 2022, requesting that the court confirm the Arbitration Award. Marshall opposes confirmation of the Arbitration Award solely because, at the time Spindletop moved to enforce the Arbitration Agreement, she was not aware of the recent enactment of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFA Act"), 9 U.S.C. § 402.

II.   Analysis

The Federal Arbitration Act ("FAA") establishes "a federal policy favoring arbitration." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA promotes two goals—the "enforcement of private agreements and encouragement of efficient and speedy dispute

---

[1] Marshall explains that she agreed to arbitration primarily because, in a separate action brought by another former employee against Spindletop, this court had already held the same arbitration agreement enforceable. *See Carnley v. Hum. Servs. of Se. Tex., Inc.*, 1:18-CV-212 (E.D. Tex. Oct. 11, 2018) (#9). In fact, given the court's prior ruling in *Carnley*, Marshall states that she filed this suit only to "ensure that no arguments could be made concerning the statute of limitations and to ensure Spindletop paid for the arbitration as required by the agreement."

2

resolution." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . .

9 U.S.C. § 9. Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft MBH & CIE KG*, 783 F.3d 1010, 1015 (5th Cir. 2015) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)), *cert. denied*, 577 U.S. 1092 (2016); *Vantage Deepwater Co. v. Petrobras Am. Inc.*, No. 4:18-CV-02246, 2019 WL 2161037, at *2 (S.D. Tex. May 17, 2019) (quoting *Oxford Health Plans LLC*, 569 U.S. at 568), *aff'd*, 966 F.3d 361 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1395 (2021).

Rule 42(c) of the AAA Employment Arbitration Rules and Mediation Procedures ("AAA Rules") provides that "[p]arties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction." The United States Court of Appeals for the Fifth Circuit has interpreted such a provision to mean that arbitration conducted under the AAA Rules is binding and subject to enforcement by the entry of a judgment unless the parties expressly agree otherwise. *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 983-84 (5th Cir. 1995) (construing an AAA-governed arbitration clause as creating a presumption of binding arbitration); *accord Warren v. Geller*, 386 F. Supp. 3d 744, 754 (E.D. La. 2019) (quoting *McKee*, 45 F.3d at 983); *Wash. Mut. Bank v. Crest Mortg. Co.*, 418 F. Supp. 2d 860, 862 (N.D. Tex. 2006) ("[B]y incorporating

3

AAA[ ] Rules into their arbitration agreement, the parties have implicitly consented to an entry of judgment by an appropriate court."); *Duke v. Crop Growers Ins., Inc.*, 70 F. Supp. 2d 711, 714-15 (S.D. Tex. 1999) (stating that arbitration will be "deemed both binding and subject to entry of judgment unless the parties expressly agree otherwise"). Indeed, numerous courts have held that arbitration proceedings conducted in accordance with the AAA Rules constitute binding arbitration that can be enforced in court. *See Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 617 F.3d 177, 181-82 (2d Cir. 2010); *Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 307-08 (4th Cir. 2008) (citing *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 192-94 (4th Cir. 1991)); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1273 (7th Cir. 1976).

Courts have also recognized that parties agree to binding arbitration when their agreement to arbitrate provides that the arbitration award will be "final and binding." *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 745 (8th Cir. 2003), *cert. denied*, 540 U.S. 1219 (2004); *see P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866-67 (10th Cir. 1999) ("If the parties to an arbitration clause agree that their arbitration shall be final and binding, some courts have held that the parties have consented to judicial confirmation of awards, because judicial involvement is the only way to make arbitration awards final and binding."); *Place St. Charles v. J.A. Jones Constr. Co.*, 823 F.2d 120, 124 (5th Cir. 1987) (implying consent to entry of judgment based on the parties' invocation of the court's jurisdiction and agreement to be bound by the result of arbitration (citing *T&R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278-79 (5th Cir. 1980))); *EuroChem Trading USA Corp. v. Ganske*, No. 18-cv-16-slc, 2019 WL 2929760, at *3 (W.D. Wis. July 8, 2019) (concluding that the court had jurisdiction to confirm the arbitration award where the arbitration agreement specified that the arbitration award would

be "final and binding" and the party opposing confirmation of the award "participated fully in the arbitration process"). Furthermore, "[t]he binding effect of the arbitration clause does not turn on whether [a party has] enforced the award; rather, the arbitration award becomes final once the arbitrator releases his findings." *Duke*, 70 F. Supp. 2d at 716 n.3; *see Nat'l Builders Ins. Co. v. Architects, Devs. & Contractors, Inc.*, No. 5:20-CV-162-H, 2021 WL 3030178, at *4-5 (N.D. Tex. Feb. 10, 2021) (interpreting an arbitration clause providing that an arbitration award "*shall* be final and binding and judgment upon any such award *may* be entered in any court having jurisdiction" as establishing that "arbitration awards are final and binding regardless of whether they are confirmed" (emphasis added)).

The Arbitration Agreement in this case explicitly states that "[a]ny controversy or dispute . . . shall be resolved exclusively by final and binding arbitration." Moreover, AAA Rule 39(g) instructs that "[t]he arbitrator's award shall be final and binding." Accordingly, it is clear that the parties agreed to binding arbitration.

Nevertheless, Marshall opposes confirmation of the Arbitration Award because she claims that the recent enactment of the EFA Act "makes the [A]rbitration [A]greement unenforceable against [Marshall] in this matter." On March 3, 2022, President Biden signed the EFA Act into law. The EFA Act provides in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute[2] or sexual assault dispute . . . no predispute arbitration agreement[3] . . . shall be valid or enforceable

---

[2] The EFA Act defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

[3] The EFA Act defines a "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1).

>with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The plain language of the EFA Act, however, explicitly states that it applies only "with respect to any dispute or claim that arises or accrues *on or after the date of enactment of this Act*." Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, PUB. L. NO. 117-90, § 3, 136 Stat. 26, 28 (2022) (emphasis added).

"Under established federal law, the 180-day limitations period for Title VII claims . . . begin[s] to accrue 'when the plaintiff knows or reasonably should know that the discriminatory act has occurred.'" *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (quoting *Cervantes v. Imco, Halliburton Servs.*, 724 F.2d 511, 513 (5th Cir. 1984)); *accord Tate v. Veolia Transp. Servs., Inc.*, No. A-09-CA-133-JRN, 2010 WL 11598051, at *3 (W.D. Tex. Aug. 20, 2010). The Fifth Circuit has also "consistently focused on the date that [the] plaintiff knew of the discriminatory *act*." *Abels v. Braithwaite*, 832 F. App'x 335, 336 (5th Cir. 2020) (per curiam) (quoting *Merrill*, 806 F.2d at 605).

Here, Marshall's sexual harassment claim accrued well before the enactment of the EFA Act. The date that Spindletop terminated Marshall's employment—which was, at the latest, August 16, 2018[4]—was the last possible date that Marshall's claim could have accrued. Marshall does not suggest that her claim accrued at a later date. Thus, Marshall's claim accrued over three years before the enactment of the EFA Act on March 3, 2022, rendering the EFA Act inapplicable

---

[4] Marshall and Spindletop allege that Marshall's termination occurred in different months. Marshall's Original Complaint (#1) states that she received "a demotion and termination of [her] position" on June 4, 2018. Spindletop, however, asserts in its reply in support of the pending motion that "[Spindletop's] decision to terminate Marshall's employment" occurred on August 16, 2018. Despite this discrepancy, it is undisputed that Marshall's employment with Spindletop was terminated in 2018, which is well before the enactment of the EFA Act.

to her situation. Notably, several other courts have similarly refused to apply the EFA Act retroactively to claims that were filed before its enactment or that arose from adverse employment actions that occurred before its enactment. *See Woodruff v. Dollar Gen. Corp.*, No. 21-1705-GBW, 2022 WL 17752359, at *3-4 (D. Del. Dec. 19, 2022); *Walters v. Starbucks Corp.*, No. 22cv1907 (DLC), 2022 WL 3684901, at *2-3 (S.D.N.Y. Aug. 25, 2022); *Zinsky v. Russin*, No. 2:22-cv-547, 2022 WL 2906371, at *3-4 (W.D. Pa. July 22, 2022); *Newcombe-Dierl v. Amgen*, No. CV-22-2155-DMG (MRWx), 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022). Therefore, because the EFA Act does not apply retroactively and Marshall's claim clearly accrued (and was filed) well before its enactment, the EFA Act does not preclude confirmation of the Arbitration Award in this case.

III.   Conclusion

Based on the foregoing analysis, Spindletop's Opposed Application for Court to Enter Order Confirming Arbitration Award (#17) is GRANTED. Accordingly, it is ordered that the stay in this case is lifted and that judgment confirming the Arbitration Award in the amount of $0.00 will be entered.

SIGNED at Beaumont, Texas, this 7th day of February, 2023.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE