**UNITED STATES DISTRICT COURT**                **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RACHAEL MARSHALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:21-CV-529 |
| | § | |
| HUMAN SERVICES OF SOUTHEAST | § | |
| TEXAS, INC. d/b/a SPINDLETOP CENTER | § | |
| f/k/a SPINDLETOP MHMR SERVICES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Human Services of Southeast Texas, Inc. d/b/a Spindletop Center f/k/a Spindletop MHMR Services's ("Spindletop Center") Opposed Motion to Tax Costs (#23), wherein Spindletop Center seeks to recover its costs for copies of deposition transcripts that were submitted as evidence in an arbitration proceeding related to this case. Plaintiff Rachael Marshall ("Marshall") filed a response in opposition to the motion (#26), and Spindletop Center filed a reply (#27). Subsequently, the court issued an Order (#28) directing the parties to file supplemental briefs addressing whether the court may award arbitration-related costs, given that the Arbitration Award (#17-1) did not address the taxation of costs. Spindletop Center and Marshall each filed their respective supplemental briefs on July 26, 2023 (#s 29, 30). Having considered the pending motion, the submissions of the parties, and the applicable law, the court is of the opinion that Spindletop Center's motion should be denied.

I.    Background

On October 21, 2021, Marshall filed an employment discrimination action against Spindletop Center, alleging that from approximately September 2015 to June 2018, when her

employment was terminated, she suffered sexual harassment and retaliation at her workplace, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Texas Commission on Human Rights Act, Texas Labor Code § 21.001.  Months later, Marshall filed her Motion to Stay Pending Arbitration (#7), explaining that she had previously signed an arbitration agreement (the "Arbitration Agreement") (#11-1) and that Spindletop Center had agreed to cover the costs of arbitration.[1]  Spindletop Center then filed an Unopposed Motion to Compel Arbitration (#11) on March 30, 2022.  The court granted both Marshall's motion to stay and Spindletop Center's motion to compel arbitration by an Order (#13) dated April 21, 2022, which directed the parties to commence arbitration by May 23, 2022.

The parties agreed to arbitrate before Judge Steven Kirkland (the "Arbitrator").  Spindletop Center filed a motion for summary judgment with the Arbitrator on July 29, 2022, and Marshall responded.  Following a hearing on the motion held in conjunction with the final status conference, the Arbitrator issued a final decision on September 23, 2022, finding that Marshall should "take nothing."  The Arbitration Award did not address fees or costs.  Spindletop Center then filed an Opposed Application for Court to Enter Order Confirming Arbitration Award (#17), which the court granted in a Memorandum and Order (#20) signed on February 7, 2023.  The

---

[1] Although Marshall's motion to stay pending arbitration stated that "the Defendants have agreed to cover the cost of the arbitration," it is unclear precisely which costs Spindletop Center purportedly agreed to cover.  Marshall's motion cites an order entered by this court in a separate action brought by another former employee against Spindletop Center in which the court discussed Spindletop Center's responsibility to pay a filing fee and a case management fee under the American Arbitration Association's ("AAA") Employment Arbitration Rules and Mediation Procedures.  *See Carnley v. Hum. Servs. of Se. Tex., Inc.*, 1:18-cv-212 (E.D. Tex. Dec. 20, 2018) (#17).  In any event, Marshall's briefing on the present motion does not reference her previous assertion that Spindletop Center agreed to cover the costs of arbitration.

court subsequently entered a Final Judgment (#22), ordering that Marshall "shall take nothing" from Spindletop Center.

Now, asserting that it is the prevailing party, Spindletop Center seeks to recover its costs for copies of deposition transcripts that were submitted as evidence during the arbitration proceeding.[2]  Specifically, Spindletop Center's Bill of Costs (#24) seeks:  (1) $442.90 for one copy of the transcript of Holly Borel's ("Borel")[3] deposition, and (2) $2,181.90 for the original and one copy of the transcript of Marshall's deposition.  In total, Spindletop Center requests an award of costs totaling $2,624.80.[4]

In the current motion and its supplemental briefing, Spindletop Center maintains that it is entitled to an award of costs as the prevailing party.  Spindletop Center relies upon Section 1.3 of the Arbitration Agreement, which states in relevant part:  "[T]he prevailing party shall have the right to recover its costs, including both taxable costs and expenses, reasonable and necessary attorney fees, and arbitration fees and expenses, including the fees of the arbitrator, incurred in enforcement[.]"  Spindletop Center also contends that, although the Arbitrator did not award any

---

[2] In the Arbitration Award, the Arbitrator listed both transcripts as evidence submitted in conjunction with the parties' briefing on Spindletop Center's summary judgment motion.  Notably, neither deposition was filed on this court's docket as evidence related to the limited issues that the court considered in this case:  motions seeking to compel arbitration and to confirm the Arbitration Award.

[3] Borel served as Spindletop Center's interim chief executive officer during the time period Marshall claimed to have experienced retaliation under Title VII.

[4] Although ¶ 4.a of Spindletop Center's pending motion states that its costs total "six thousand, two hundred and thirteen dollars and eighty five cents," Spindletop Center consistently uses the number $2,624.80 in its motion, proposed order, and bill of costs.  Furthermore, when added together, the two specific costs that Spindletop Center identifies—$442.90 for the copy of Borel's deposition transcript and $2,181.90 for the original and copy of Marshall's deposition transcript—total $2,624.80.  The court accordingly concludes that Spindletop Center seeks costs in the amount of $2,624.80.

costs, the court may nevertheless award costs because doing so will not "upset or otherwise modify" the Arbitrator's decision.

In response, Marshall first objects to Spindletop Center's motion on the grounds that paying the requested costs "would constitute an extreme financial burden" for her.  In her supplemental briefing, Marshall further opposes an award of costs to Spindletop Center because she argues that, at the time of the parties' arbitration, the AAA's Employment Arbitration Rules and Mediation Procedures precluded an award of costs unless the Arbitrator issued a finding that "the suit was filed for the purposes of harassment or was patently frivolous."

## II.   Analysis

### A.   Awarding Costs Under Federal Rule of Civil Procedure 54(d)(1)

Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1); *see Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 276 (5th Cir. 2020); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015); *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 383-84 (5th Cir. 2012). "'Prevailing party' is a legal term of art and defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'"  *Morris v. Grecon, Inc.*, 388 F. Supp. 3d 711, 714-15 (E.D. Tex. 2019) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)).  There is "a venerable presumption that prevailing parties are entitled to costs."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013); *accord Edwards v. 4JLJ, L.L.C.*, 976 F.3d 463, 466 (5th Cir. 2020); *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018); *Morris*, 388 F. Supp. 3d at 714.  Indeed, the United States Court of Appeals for the Fifth Circuit has held that "'the prevailing party is prima facie

4

entitled to costs,' and has described the denial of costs as 'in the nature of a penalty.'" *Pacheco v. Mineta*, 448 F.3d 783, 793-94 (5th Cir.) (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)), *cert. denied*, 549 U.S. 888 (2006); *accord Morris*, 388 F. Supp. 3d at 714. Therefore, courts have assumed that costs should be denied "to the prevailing party 'only when there would be an element of injustice in a cost award.'" *Pacheco*, 448 F.3d at 793-94 (quoting *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 355 n.14 (1981)).

    B.    <u>Awarding Costs in Cases Subject to Arbitration</u>

Nevertheless, despite the general presumption that a prevailing party is entitled to recover its costs, the court must also bear in mind that judicial review of arbitration awards is "exceedingly deferential." *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 368 (5th Cir. 2020) (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674 (5th Cir. 2012)), *cert. denied*, 141 S. Ct. 1395 (2021); *see Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822, 826 (5th Cir. 2020) (describing judicial review of arbitration awards as "extraordinarily narrow," "severely limited," and "one of the most deferential standards"). This deferential review reflects the "national policy" established by the Federal Arbitration Act ("FAA") of "favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (quoting *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)); *see Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 301 (5th Cir. 2021).

As a result, the Fifth Circuit has instructed that in cases subject to arbitration agreements:

> If, as is often the case, the arbitration agreement . . . provide[s] that "any dispute arising from the contract" would be submitted to arbitration, a strong case could be made that any award of attorney's fees, interest, and costs was necessarily

submitted to the arbitrators and a district court that made such an award would be impermissibly modifying the arbitrators' decision.

*Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 581 (5th Cir. 1986). The Fifth Circuit explained that "[i]n such circumstances, where the parties made an agreement intended to avoid court litigation by resolving the entire dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the [FAA]." *Id.*; *see Warren v. Geller*, No. 11-2282, 2014 WL 4186482, at *14 (E.D. La. Aug. 22, 2014).

In the case at bar, the parties' Arbitration Agreement includes broad language akin to the phrase—"any dispute arising from the contract"—that typically signifies that issues of costs and related relief are "necessarily submitted to the arbitrator[ ]." *Schlobohm*, 806 F.2d at 581. While the arbitration agreement in *Schlobohm* arose out of a franchisor-franchisee relationship, *id.* at 579, the same result obtains where an arbitration agreement governing an employer-employee relationship contains similar language stating that it "applies to any dispute arising out of or related to [the employee's] employment with [the employer]." *Gonzalez v. Mayhill Behav. Health, LLC*, No. 4:21-MC-00188, 2022 WL 1185889, at *6 (E.D. Tex. Apr. 21, 2022) (relying on the expansive language in the arbitration agreement to hold that, following arbitration of the plaintiff's employment discrimination claim, the court was precluded from awarding additional damages and attorneys' fees that were not included in the arbitration award).

Here, Section 1.1 of the Arbitration Agreement contains language nearly identical to the arbitration agreement in *Gonzalez*. Specifically, the Arbitration Agreement provides that "[a]ny controversy or dispute between Employee and Spindletop Center . . . arising from or in any way related to Employee's employment by Spindletop Center, or the termination thereof . . . shall be resolved exclusively by final and binding arbitration[.]" Thus, the comprehensive language of the

Arbitration Agreement indicates that issues concerning costs arising from the parties' arbitration of Marshall's employment discrimination claims were required to be submitted to the Arbitrator. Although Spindletop Center attempts to avoid this result by asserting that the Arbitration Agreement enables it to recover its costs and contending that such an award would not "upset or modify" the Arbitrator's decision, its arguments are unavailing.

       1.    <u>Spindletop Center's Argument Regarding the Arbitration Agreement</u>

In its supplemental briefing, Spindletop Center first argues that it is entitled to recover its costs because the Arbitration Agreement provides in Section 1.3:

> [T]he parties shall have the right to enforce this Agreement and the prevailing party shall have the right to recover its costs, including both taxable costs and expenses, reasonable and necessary attorney fees, and arbitration fees and expenses,[5] including the fees of the arbitrator, incurred in enforcement, including any confirmation, modification, or vacatur proceeding or appeal from such proceeding.

Spindletop Center asserts that because it is the prevailing party,[6] the "clear terms" of the Arbitration Agreement permit the court to award its costs.  Such an argument, however, ignores

---

[5] The court notes that, as discussed below, this section appears to reference only those arbitration fees and expenses that are specifically incurred while arbitrating the enforceability of the Arbitration Agreement.  As provided in Section 1.1, such disputes over "enforcement of this Agreement" "must be arbitrated."

[6] As Spindletop Center points out, Marshall's response does not dispute that Spindletop Center is the prevailing party.

the larger context of this section of the Arbitration Agreement.[7]  In particular, the sentence referencing the "prevailing party" discusses the "right to enforce this Agreement" and specifically notes that the prevailing party may recover various types of costs "incurred in enforcement."  In essence, this section regarding the right to recover costs is explicitly tied to proceedings involving enforcement of either the Arbitration Agreement or an arbitrator's final award, including "any confirmation, modification, or vacatur proceeding or appeal from such proceeding."

Importantly, the costs that Spindletop Center now seeks to recover—the costs for deposition transcripts submitted as evidence in the arbitration proceeding which the Arbitrator considered

---

[7] Generally, courts apply "ordinary state-law principles that govern the formation of contracts" when interpreting arbitration agreements.  *IMA, Inc. v. Columbia Hosp. Med. City at Dall.*, 1 F.4th 385, 391 (5th Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (determining whether an arbitration agreement was formed); *see Sain v. TransCanada USA Servs., Inc.*, No. H-22-2921, 2023 WL 417476, at *5 (S.D. Tex. Jan. 25, 2023) (explaining that courts "look to 'ordinary state-law principles that govern the formation of contracts'" when interpreting an arbitration clause or agreement to determine whether an arbitration award "arose out of an arbitrable or nonarbitrable dispute" (quoting *First Options of Chi., Inc.*, 514 U.S. at 944)).  Notably, Section 2.6 of the Arbitration Agreement provides that the Arbitration Agreement "shall be governed by and construed . . . pursuant to the laws of the State of Texas . . . ."

Under Texas law, "[c]ontract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense."  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *accord Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419 (5th Cir. 2014).  Furthermore, when construing a contract, the intention of the parties is to be gathered from the instrument as a whole.  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012); *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).  The court should "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *accord Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *accord Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010); *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345.  This is merely an application of the long-established rule in Texas that "[n]o one phrase, sentence or section [of a contract] should be isolated from its setting and considered apart from the other provisions."  *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)).

when ruling on Spindletop Center's summary judgment motion—do not arise from enforcement proceedings.  In fact, the deposition transcripts were not submitted to this court as part of the briefing for either Spindletop Center's Unopposed Motion to Compel Arbitration (#11) or Spindletop Center's Opposed Application for Court to Enter Order Confirming Arbitration Award (#17).  Rather, the deposition transcripts were submitted only in relation to the employment discrimination claims at the heart of the matter referred to arbitration, as evidenced by the Arbitrator's consideration of the depositions when ruling on Spindletop Center's summary judgment motion.[8]  Spindletop Center, therefore, has failed to demonstrate that the costs of producing copies of the deposition transcripts were incurred during proceedings to enforce the Arbitration Agreement or the Arbitration Award.  Accordingly, Section 1.3 of the Arbitration Agreement does not appear to cover Spindletop Center's recovery of these costs.

Moreover, the first sentence of Section 1.3 of the Arbitration Agreement explicitly notes that "*the arbitrator* may grant any relief . . . which could be granted by a court of competent jurisdiction" (emphasis added).  Notably, no part of Section 1.3 of the Arbitration Agreement discusses the court's ability to tax costs after the arbitrator has issued a final award omitting any mention of costs.  The court is thus unpersuaded that Section 1.3 of the Arbitration Agreement empowers it to award arbitration-related costs that the Arbitrator did not include in the Arbitration Award.

---

[8] The Arbitration Award explains that Spindletop Center filed a summary judgment motion seeking a favorable judgment "on all issues."  The Arbitration Award further notes that the evidence presented to the Arbitrator included "the July 25, 2022 deposition of Rachael Marshall taken in this case" and "the transcript of the deposition testimony of Holly Borel."  Indeed, Marshall's supplemental briefing states, albeit in support of a different argument, that the depositions "are the proof that [Spindletop Center] relied on to secure [its] summary judgment."

Spindletop Center nevertheless maintains that a court may award costs to a prevailing party following confirmation of an arbitration award, citing three cases in support of this proposition. The cases upon which Spindletop Center relies, however, are inapposite because the courts specifically awarded only those costs that the prevailing parties incurred during litigation to enforce the arbitration awards.  *See CF Glob. Trading, LLC v. Wassenaar*, No. 13 Civ. 766(KPF), 2013 WL 5538659, at *1, *11 (S.D.N.Y. Oct. 8, 2013) (granting the respondent's "request for . . . costs incurred in bringing his cross-petition," in which the respondent successfully sought to confirm the arbitration award); *Aqua Toy Store, Inc. v. Triplecheck, Inc.*, No. 04-22396, 2005 WL 8156565, at *1, *3 (S.D. Fla. July 13, 2005) (awarding the defendant its "costs incurred during the defense and prosecution of the current action against [the plaintiff]," where the plaintiff moved to vacate or modify the arbitration award and the defendant successfully moved to confirm the award), *adopted by* No. 04-22396, 2005 WL 8156563 (S.D. Fla. Aug. 18, 2005); *Lummus Glob. Amazonas v. Aguaytia Energy Del Peru*, No. H-01-495, 2002 WL 31416834, at *2-3 (S.D. Tex. July 17, 2002) (concluding that, because the defendant was "the prevailing party in this action to confirm and enter judgment enforcing the arbitration award," the defendant was entitled to recover "its costs of court incurred in this proceeding to enforce the award").  Unlike the prevailing parties in the cases it cites, Spindletop Center's pending motion requests that this court award costs that it incurred during the arbitration proceeding itself, not while litigating the enforceability of the Arbitration Award.  Thus, Spindletop Center's reliance on these cases fails to establish that the court may award the relief it seeks.

2.      Spindletop Center's Argument Regarding the Arbitration Award

Next, Spindletop Center asserts that the court may award the costs it seeks because doing so would not conflict with the Arbitrator's decision in the Arbitration Award.  Relying on *Cargill Inc. v. Clark Farm 1, L.L.C.*, Spindletop Center argues that "a district court confirming an arbitration award may award . . . costs so long as such award does not upset or modify the arbitration decision."  No. 08-456-JJB, 2013 WL 4541993, at *1 n.1 (M.D. La. Aug. 27, 2013) (citing *Schlobohm*, 806 F.2d at 580-81).  Spindletop Center ignores, however, that whereas the arbitration award in *Cargill Inc.* "expressly reserv[ed] the plaintiff's right to seek . . . costs in a court of law" by explicitly stating "[t]his award is not intended to preclude the plaintiff from pursuing an additional award for interest, legal fees, or costs in a court of law," the Arbitration Award at issue here contains no such language signaling that awarding additional relief would not "upset or modify the arbitration decision."  *Id.* at *1 & n.1.  In fact, the Arbitration Award makes no mention of costs at all.  Thus, Spindletop Center's reliance on *Cargill Inc.* fails to persuade the court that it may award costs in this case.

Importantly, Spindletop Center does not contend that this case is similar to *Schlobohm*, where "both parties agree[d]" that they had presented only a discrete legal question to the arbitrators.  806 F.2d at 581.  In *Schlobohm*, the Fifth Circuit concluded that the district court was not precluded from awarding interest, attorney's fees, and costs in part because the parties "did not agree to submit to arbitration the entire dispute between them arising from the contract."[9]  *Id.* Here, in contrast, Spindletop Center neither states nor suggests that the parties declined to submit

---

[9] The Fifth Circuit ultimately modified the district court's judgment to eliminate the award of costs on other grounds.  *Id.* at 584-85.  Specifically, it concluded that the appellee was not truly a "prevailing party" and thus was not entitled to costs.  *Id.*

the issue of costs to the Arbitrator.  Rather, the sweeping language of the Arbitration Agreement, encompassing "[a]ny controversy or dispute between Employee and Spindletop Center . . . arising from or in any way related to Employee's employment by Spindletop Center, or the termination thereof," indicates that the issue of costs arising from the arbitration of Marshall's employment discrimination claims was required to be submitted to the Arbitrator.

The court further observes that the Arbitration Award and the arbitration-related costs sought in this instance distinguish this case from yet another case where a district court awarded fees and costs not included in the arbitration award.  *See Radiant Sys., Inc. v. Am. Scheduling, Inc.*, No. 3:04-CV-2597-P, 2006 WL 2583266, at *2 (N.D. Tex. Sept. 7, 2006).  In *Radiant Systems, Inc.*, after awarding the prevailing party certain arbitration-related costs, the arbitrator explicitly noted that while the arbitration award "neither denied nor granted" any court costs, it "should not 'preclude [the prevailing party] from requesting fees from respective courts' where the parties incurred the fees and costs in litigation related to the arbitration." *Id.*  Drawing upon the arbitration award's permissive language, the district court held that it had jurisdiction to award fees and costs that the prevailing party incurred while litigating its motion to compel arbitration.[10] *Id.* at *2-3.  The court was particularly persuaded by the fact that it was awarding only fees and costs that the prevailing party had "incurred in the court-related litigation." *Id.* at *3 ("The arbitrator apparently believed—and this Court believes—the more efficient and appropriate forum for determining the reasonableness and appropriateness of fees incurred in the court-related

---

[10] Nevertheless, the court ultimately denied the prevailing party's request for attorney's fees and costs due to the party's failure to provide sufficient evidence demonstrating that the fees were reasonable. *Id.* at *5-7.  The court, however, permitted the prevailing party to amend its fee petition to provide additional details establishing the reasonableness of the fees.  *Id.*

litigation is the court.  This Court has the most intimate knowledge of the procedural history of this case and is the most appropriate arbiter of the reasonableness of the fees incurred." (internal citation omitted)).

In the case at bar, Spindletop Center cannot point to any similar language in the Arbitration Award that specifically mentions the prevailing party's ability to request costs from the court.[11] Moreover, Spindletop Center's situation is also distinct from *Radiant Systems, Inc.*, in that it seeks to recover only arbitration-related costs.  As discussed above, the costs that Spindletop Center incurred when obtaining transcripts of Borel's and Marshall's depositions are not costs that can be attributed to litigation before this court.[12]  Thus, unlike the court in *Radiant Systems, Inc.*, this court is not "the most appropriate arbiter of the reasonableness" of the requested relief.  *Id.*

In sum, the expansive scope of the Arbitration Agreement, which covers "[a]ny controversy or dispute between Employee and Spindletop Center . . . arising from or in any way related to Employee's employment by Spindletop Center, or the termination thereof,"

---

[11] The court acknowledges that, unlike the arbitrator in *Gonzalez*, the Arbitrator here did not "expressly decline[ ]" to award relief through statements like "[the plaintiff] is not awarded damages" or "[the plaintiff] is not awarded attorneys' fees."  2022 WL 1185889, at *1, *6.  Nonetheless, as discussed above, the expansive language of the Arbitration Agreement in this case demonstrates that all disputes arising from Marshall's employment with Spindletop Center—including those related to costs—were required to be submitted to the Arbitrator.  Thus, *Schlobohm*'s instruction that the court must avoid "impermissibly modifying" an arbitrator's decision where issues of costs and related relief were "necessarily submitted to the arbitrator[ ]" appears to apply with equal force in this case.  806 F.2d at 581.

[12] Notably, the mere fact that the requested relief arises from litigation-related expenses does not guarantee that a court will award the relief.  *See Warren*, 2014 WL 4186482, at *14.  In *Warren*, the district court declined to award attorney's fees arising from the defendants' litigation of their successful motion to stay pending arbitration.  *Id.*  The court denied the requested relief because the defendants had "vigorously argued that the arbitration agreement is as broad as possible and covers 'all controversies' arising between the parties," so the court reasoned that for it to award fees "would run contrary to both the [arbitration agreement] . . . and the policy of the FAA by inviting the Court to intervene in a matter that the parties had agreed to submit to arbitration."  *Id.*

demonstrates that the issue of costs arising from the arbitration of Marshall's employment discrimination claims was one for the Arbitrator.  The court is loathe to contravene the Arbitration Agreement, the Arbitration Award, and "the language and policy of the [FAA]" by awarding arbitration-related costs that the Arbitrator did not award.  *Schlobohm*, 806 F.2d at 581.  As a result, the court declines to award the costs that Spindletop Center seeks.[13]

III.   Conclusion

In accordance with the foregoing analysis, Spindletop Center's Opposed Motion to Tax Costs (#23) is DENIED.

SIGNED at Beaumont, Texas, this 1st day of October, 2023.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[13] Because the court declines to award costs based on the language of the Arbitration Agreement, the Arbitration Award, and *Schlobohm*, 806 F.2d at 581, the court need not reach Marshall's contention that awarding costs "would constitute an extreme financial burden" for her or that the AAA's Employment Arbitration Rules and Mediation Procedures preclude an award of costs under the circumstances of her case.